UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
BERKLEY REGIONAL INSURANCE COMPANY,                    Case No.: 16cv3617
                                                                (AKH)(KF)
                                    Plaintiff,

          v.                                           **AMENDED COMPLAINT**

SECURITY CONSTRUCTION SERVICES, INC.,
SECURITY FENCE COMPANY COMMERCIAL
DIVISION, LLC, SECURITY PROPERTY
MANAGEMENT, LLC, JANET B. CEDDIA, and
CHRISTOPHER CEDDIA,

                                    Defendants.
--------------------------------------------------------------------x

          Plaintiff, by its attorneys, Gottesman, Wolgel, Flynn, Weinberg & Lee, P.C., complaining

of the Defendants, SECURITY CONSTRUCTION SERVICES, INC. ("SCS"), SECURITY

FENCE COMPANY COMMERCIAL DIVISION, LLC ("SFCCD"), SECURITY PROPERTY

MANAGEMENT, LLC ("SPM"), JANET B. CEDDIA ("Janet Ceddia"), and CHRISTOPHER

CEDDIA (collectively the "Defendants"), hereby alleges as follows:

                                    **THE PARTIES**

          1.       Berkley Regional Insurance Company ("Berkley" or "Plaintiff") is a surety

organized under the laws of Delaware, with its principal place of business located in 475

Steamboat Road, Greenwich, CT 06830.

          2.       Defendant SCS is a Massachusetts corporation with its principal place of business

located in 469 River Road, Hudson, MA 01749.

          3.       Defendant SFCCD is a Massachusetts limited liability company with its principal

place of business located in 469 River Road, Hudson, MA 01749.

4.      Defendant SPM is a Massachusetts limited liability company with its principal place of business located in 16 Rocky Woods Road, Hopkinton, MA 01748.

5.      At all times hereinafter mentioned, the Defendant Janet Ceddia was and still is a resident of the Commonwealth of Massachusetts, residing at 16 Rocky Woods Road, Hopkinton, MA 01748.

6.      At all times hereinafter mentioned, the Defendant Christopher Ceddia was and still is a resident of the Commonwealth of Massachusetts, residing at 16 Rocky Woods Road, Hopkinton, MA 01748.

7.      Defendant Janet Ceddia, a resident of Massachusetts, is a member of SFCCD.

8.      Defendant Janet Ceddia, a resident of Massachusetts, is a managing member of SFCCD.

9.      Defendant Christopher Ceddia, a resident of Massachusetts, is a member of SFCCD.

10.     Defendant Christopher Ceddia, a resident of Massachusetts, is a managing member of SFCCD.

11.     Upon information and belief, defendants Janet Ceddia and Christopher Ceddia, both residents of Massachusetts, are the only members of SFCCD.

12.     Defendants Janet Ceddia and Christopher Ceddia, both residents of Massachusetts, are the only managing members of SFCCD.

13.     Defendant Janet Ceddia, a resident of Massachusetts, is a member of SPM.

14.     Defendant Janet Ceddia, a resident of Massachusetts, is a managing member of SPM.

15.     Defendant Christopher Ceddia, a resident of Massachusetts, is a member of SPM.

16.    Defendant Christopher Ceddia, a resident of Massachusetts, is a managing member of SPM.

17.    Upon information and belief, defendants Janet Ceddia and Christopher Ceddia, both residents of Massachusetts, are the only members of SPM.

18.    Defendants Janet Ceddia and Christopher Ceddia, both residents of Massachusetts, are the only managing members of SPM.

## VENUE AND JURISDICTION

19.    Pursuant to 28 U.S.C. §1332, this Court possesses diversity jurisdiction over this action. The matter in controversy, exclusive of interests and costs, exceeds the sum or value of Seventy-Five Thousand and 00/100 Dollars ($75,000.00).

20.    The Defendants consented to jurisdiction and venue in this Court and specifically waived any defenses or objections to this lawsuit being initiated or maintained in any state or federal court located within New York, including but not limited to inconvenient or improper venue or forum (Art. XII ¶12.01 of General Agreement of Indemnity). A copy of the Indemnity Agreement, dated and executed on April 2, 2010, is annexed hereto as Exhibit **A** and made a part hereof, with the reference to the individual defendants' social security numbers redacted therefrom.

**FACTS**

21.     Berkley, as surety, issued a performance bond and a payment bond under Bond No 0149292, on behalf of and at the request of SCS in connection with a contract with the United States Department of the Navy, naming SCS as principal and the United States of America as Obligee on or about October 1, 2010, to Re-Build Engine #4 at the Naval Computer and Telecommunications Area Master Station Atlantic Detachment in Cutler Main (the "Project").

22.     The Bonds were made, executed and delivered by Berkley, as surety, in consideration of and in reliance upon, among other things, the Indemnity Agreement in favor of Berkley.

23.     Pursuant to the terms of the Indemnity Agreement, the Defendants, jointly and severally agreed, among other things, to:

> "[E]xonerate, hold harmless, indemnify, and keep indemnified [Berkley] from and against any and all liability arising from any cause of action, claim, cost, damage, debt, demand, expenditure, liability, loss, payment, obligation, or penalty whatsoever, including without limitation, interest costs, court costs, costs to compromise or settle any claim, expert fees, investigative costs and the fees and expenses of attorneys, . . . of any nature whatsoever, whether or not alleged, asserted, awarded, contingent, incurred, potential, threatened, matured or unmatured, and shall reimburse [Berkley] for any payment by it, related to or by reason of: (i) this Agreement, a Contract or Bonds and/or [Berkley's] procuring or enforcement of the same or the prosecution, investigation or defense of any Claim against or by [Berkley]; . . . or (iv) the occurrence of an Event of Default and any prosecution, investigation, defense or settlement of the same by [Berkley]."

Article I ¶1.01 of the Indemnity Agreement annexed hereto as Exhibit **A**.

24.     Defendants are jointly and severally obligated to Berkley to exonerate, hold harmless, and indemnify Berkley and resolve all claims against Berkley's aforesaid bonds, all without any loss, cost, or expense to Berkley.

NRG Energy Services LLC's Claim

25.     NRG Energy Services LLC ("NRG"), a subcontractor of SCS, submitted a payment bond claim in the amount of $141,858.70 on October 27, 2105 to Berkley alleging non-payment by SCS for work performed and materials provided in connection with the Project.

26.     Berkley made a written demand for collateral to the Defendants on or about January 12, 2016.

27.     Defendants did not provide collateral as required by the terms of the Indemnity Agreement. *See* Article I ¶1.02 of the Indemnity Agreement annexed hereto as Exhibit **A**.

28.     Thereafter, on or about March 4, 2016, the United States of America for the benefit of NRG commenced an action against SCS and the Plaintiff in the United States District Court for the District of Maine (16cv00115-GZS) (the "Maine Action").

29.     Plaintiff, after an investigation, resolved NRG's claim in the amount of $87,564.05 on or about March 24, 2016.

30.     The Maine Action was voluntarily dismissed by notice of dismissal filed on May 6, 2016 and certificate of service filed on May 10, 2016.

31.     Plaintiff made a written demand for indemnification to the Defendants on or about April 29, 2016.

32.     Defendants have not indemnified Plaintiff.

33.     Berkley had the right to settle any claims in which the Surety has an interest under the terms of the Indemnity Agreement:

> The Surety shall have the exclusive right in its name and/or the name of any Indemnitor to decide and determine whether any Indemnified claim, or any claim, off-set or other right of an Indemnitor on a Bonded Contract or Contract in which the Surety has an interest, shall or shall not be paid, compromised, settled, resisted, defended prosecuted, tried or appealed, and the Surety's decision

5

thereon, absent fraud, shall be final, conclusive an binding upon the Indemnitors. An itemized statement of payments made by the Surety for any of the purposes specified herein, sworn to by an officer of the Surety or the copies of the checks or drafts for such payments, shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety such amounts with interest from the date payment.

Article II ¶2.01 of the Indemnity Agreement annexed hereto as Exhibit **A**.

## COUNT I
### (Payment Bond Losses)

34.    Berkley re-alleges and incorporates paragraphs 1 through 33 above, as though fully set forth herein.

35.    The Defendants are required to indemnify Berkley for its losses and potential losses resulting from SCS's default and/or the termination of the subcontract between TLC and CH2M.

36.    A payment bond loss payment has been made by Berkley, pursuant to its obligations under its payment bond, to NRG for a sum not less than the amount of $87,564.05.

37.    By reason of the foregoing, Defendants are liable, jointly and severally, to indemnify Berkley in the sum of at least $87,564.05, plus any additional losses for any payment and performance bond claims and/or losses that the Surety incurs after the date of the complaint for a sum not yet determined.

## COUNT II
### (Breach of Contract:  Indemnity for Loss Adjustment Expenses)

38.     Berkley repeats and re-alleges each and every allegation set forth in paragraphs 1-37 herein, as if again set forth in length.

39.    Additional sums were incurred and paid by Berkley in connection with the performance and payment bond obligations of Berkley for investigating and/or resolving the

claims under the Berkley Performance and Payment Bond for counsel fees and expenses and for consultant fees and expenses.

40.     Berkley has heretofore paid loss expenses, including attorneys' fees and expenses in the sum of $ 7,741.00.

41.     By reason of the foregoing, Defendants are liable, jointly and severally, to Berkley for all losses, costs, charges for consultants' and attorneys' fees and expenses that have been sustained or incurred by Berkley in connection with the issuance of the Performance and Payment Bonds and/or this litigation, including, but not limited to, the consultants' and attorneys' fees heretofore incurred and paid, not less than $ 7,741.00 plus interest.

## COUNT III
### (Breach of Contract:  Indemnity for Future Expenses)

42.     Berkley repeats and re-alleges each and every allegation set forth in paragraphs 1-41 herein, as if again set forth in length.

43.     Pursuant to the terms of the Indemnity Agreement executed by the Defendants, the Defendants, jointly and severally, agreed to indemnify Berkley for counsel and consultant fees and expenses incurred in enforcing the terms of the Indemnity Agreement.

44.     By reason of the foregoing, Defendants are liable, jointly and severally to Berkley for all losses, costs, charges for consultants' and attorneys' fees and expenses that will be sustained or to be incurred by Berkley in connection with the Lawsuit, Arbitration, or for this litigation for such amounts incurred together with interest thereon.

## COUNT IV
### (*Quia Timet*:  NRG Claim)

45.      Berkley repeats and re-alleges each and every allegation set forth in paragraphs 1-44 herein, as if again set forth in length.

46.      Under the Indemnity Agreement, Defendants also agreed, jointly and severally, among other things, to deposit collateral with Berkley in the event of any claim or of default. *See* Article III, ¶¶ 3.01, 3.02 of the Indemnity Agreement annexed hereto as Exhibit **A**.

47.      Upon information and belief, SCS failed to timely pay NRG for the work performed and materials provided by NRG.

48.      Pursuant to the Indemnity Agreement, a default is defined as, among other things, the failure, delay or inability of any of the Defendants to fully perform or observe any term, covenant or condition of this Indemnity Agreement, or of a Contract or Bonds, whether actual or alleged; a failure, delay or inability to promptly and full pay when due any Indemnified Claim or Expense; to a declaration of default or termination under a bonded contract; and, commencement of a proceeding, such as the Maine Action.  *See* Article IV, ¶4.01of the Indemnity Agreement annexed hereto as Exhibit **A**.

49.      By letter dated January 12, 2016 and April 22, 2016, Berkley demanded that the Defendants deposit collateral and indemnify with the Surety, but no collateral or indemnity has been received.

50.      Upon information and belief, the Defendants are each in a precarious financial condition.

51.      Berkley is fearful and apprehensive that the Defendants each are, or each may become, financially unable to reimburse Berkley for the losses Berkley was compelled to pay

under the payment bond, including counsel fees, consultant fees and expert fees heretofore incurred and to be incurred in bringing this action.

52.     Berkley is fearful and apprehensive that the Defendants may, jointly or severally, conceal their property and assets or place same beyond the reach of Berkley, thereby making recovery from any of them difficult if not impossible, and that Berkley will thereby suffer irreparable damages and loss through its inability to recover from the defendants whatever amounts Berkley may be compelled to pay under the aforementioned performance bond or may incur in connection therewith in expenses, fees and costs.

53.     Berkley has no adequate remedy at law and the declaratory and equitable relief sought herein constitutes the only means by which Berkley can secure adequate relief and by which furtherance of justice may be served.

54.     Upon information and belief, unless the relief in the nature herein is requested or its equivalent is granted, the equitable rights of Berkley will be lost and Berkley will suffer irreparable loss and damage.

55.     By reason of the foregoing, Berkley is entitled to the declaratory judgment, equitable relief of *quia timet*, and an order from the Court directing that the Defendants deposit with Berkley or the Clerk of this Court for the benefit and protection of Berkley as Surety an amount to be determined by the Court.

56.     The deposit of collateral is necessary to secure Berkley against the claims heretofore made, loss adjustment expenses incurred, and loss adjustment expenses to be incurred in the response to said claims, or the defense of such claims, as well as loss adjustment fees and expenses incurred in connection with and such additional sums as may be necessary in bringing this action and pending the full and complete discharge of Berkley' liability under its

performance bond and the reimbursement of Berkley for any and all amounts that it may be required to pay under its bond, including reimbursement of its own consultants' and attorneys' fees, costs, and expenses; or (b) in the alternative, that the Court order the appointment of a receiver to receive and conserve the property and assets of the defendants, pending the full exoneration and relief of Berkley from liability under its bond, and reimbursement of Berkley for the amount Berkley may be required to pay thereunder, including its own costs and loss adjustment expenses; or (c) that the Court order the Defendants, jointly and severally to exonerate and relieve Berkley, and hold Berkley harmless from all liability, loss, cost, damage, and expenses by such other means and methods as the Court may deem just, reasonable and feasible.

**WHEREFORE**, Berkley demands judgment for entry of a money judgment against Defendants, jointly and severally:

1)    On the **FIRST** Cause of Action for an amount not less than $87,564.05 for the payment made to NRG by Berkley in settlement of the Payment Bond Claim.

2)    On the **SECOND** Cause of Action for an amount not less than $7,741.00 for loss adjustment expenses, plus such additional amounts incurred by Berkley not yet determined;

3)    On the **THIRD** Cause of Action for such additional amounts as are incurred by Berkley as the matter progresses;

4)    On the **FOURTH** Cause of Action, judgment granting Berkley the equitable relief of *quia timet* and directing the Defendants, jointly and severally, to post and deposit collateral with Berkley or in the alternative with the Court to indemnify Berkley against potential losses to be incurred for any remaining bond exposure;

5)      All with due and proper interest, together with the costs and disbursements

of this action and such other and further relief as the Court deems just and proper.

Dated: New York, New York
       July 14, 2016

                                    Respectfully submitted,


                              By:  _s/ Richard B. Demas_____
                                    Richard B. Demas, Esq.
                                    GOTTESMAN, WOLGEL, FLYNN,
                                    WEINBERG & LEE, P.C.
                                    *Attorneys for Plaintiff*
                                    *Berkley Regional Insurance Company*
                                    11 Hanover Square, 4th Floor
                                    New York, NY 10005
                                    Telephone:  (212) 495-0100
                                    Facsimile:  (212) 480-9797
                                    Email: rdemas@gottesmanlaw.com


To:    MURTHA CULLINA LLP
       Attn: Taruna Garg, Esq.
       *Attorneys for Defendants*
       177 Broad Street, 16th Floor
       Stamford, CT 06901
       Telephone:  (203) 653-5400
       Facsimile:  (203) 653-5444
       Email: tgarg@murthalaw.com